UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT W.,[1]

Plaintiff,

Case # 23-CV-688-FPG

v.

DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

Plaintiff Robert W. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 9. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is DENIED, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In December 2019, Plaintiff protectively applied for SSI with the Social Security Administration ("SSA"). Tr.[2] 20. He alleged disability since September 19, 2017. Tr. 263. The claim was initially denied on March 10, 2020, and upon reconsideration on June 16, 2020. Tr. 20. On July 19, 2022, Administrative Law Judge Stephen Cordovani (the "ALJ") held a hearing.

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

Tr. 38–79. The ALJ issued a decision on August 30, 2022, finding that Plaintiff was not disabled. Tr. 20–31. Plaintiff requested review by the Appeals Council, but the request was denied on May 15, 2023. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listing"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.920(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date of December 12, 2019. Tr. 22. At step two, the ALJ found that Plaintiff had severe impairments of left hip fracture, degenerative disc disease of the lumbar spine, bilateral lower extremity neuropathy, depression, anxiety, and post-traumatic stress disorder. Tr. 22. At step three, the ALJ concluded that none of Plaintiff's impairments met or medically equaled one of the impairments in the Listing. Tr. 23.

Next, the ALJ found that Plaintiff had the RFC to perform light work with additional nonexertional limitations. Tr. 25–29. At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 29. At step five, the ALJ found that, given his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. Tr. 30. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 31.

### II. Analysis

Plaintiff argues that remand is warranted because the ALJ: (1) improperly relied on stale non-examining opinions based on an incomplete record in assessing Plaintiff's physical RFC; and (2) improperly evaluated medical opinions. ECF No. 7-1 at 13–27. The Court analyzes each argument below.

#### a. Reliance on Stale Non-Examining Opinions

Plaintiff argues that the ALJ inappropriately relied on the opinions of non-examining physicians even though these opinions were rendered stale by subsequent treatment records and were based on an incomplete record. ECF No. 7-1 at 14–21. Plaintiff argues that this created gaps

in the record regarding pain and the ALJ improperly substituted his lay opinion to fill this gap. *Id.* at 17–21. Plaintiff contends that instead, the ALJ should have developed the record by seeking opinion evidence to interpret the raw medical data concerning Plaintiff's subsequent treatment. *Id.* at 18–19. The Court will discuss each argument below.

**1. Stale Opinions**

Plaintiff claims that the ALJ improperly relied on the opinions of state agency medical consultants Dr. J. Lawrence and Dr. C. Krist. ECF No. 7-1 at 14–16. In particular, Plaintiff argues that these physicians did not personally examine him and formed opinions prior to Plaintiff receiving subsequent hip surgery and testing, which rendered the opinions stale. *Id.* The Court disagrees.

"Reversal may be appropriate where the Commissioner's decision to deny benefits rests on a consultative opinion that was 'stale' because it was rendered on an incomplete record, particularly where subsequent developments in the medical evidence cast doubt on the accuracy of the opinion[.]" *Nicole P. o/b/o A.C. v. Comm'r of Soc. Sec.*, No. 20-CV-0454, 2021 WL 3887259, at *7 (W.D.N.Y. Aug. 31, 2021). "[T]he mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Id.* (citation omitted). "With regard to an ALJ's alleged reliance on 'stale' evidence, overall, remand is warranted where more recent evidence in the record directly contradicts the older reports of claimant's functioning on which the ALJ relied and the ALJ failed to analyze the more recent evidence." *Id.* at *8 (quotation marks, brackets, and citation omitted).

Plaintiff fractured his left hip in May 2019. Tr. 507. The record shows, and the ALJ noted, that Plaintiff had a reciprocal gait and no pain with the left hip internal and external rotation. Tr. 26, 693. X-ray imaging of Plaintiff's hip also showed a mostly healed left femoral neck fracture

through "4 threaded screws" that were transfixed. Tr. 26, 695. In March 2020, Dr. Lawrence reviewed Plaintiff's records and opined that Plaintiff "appears appropriate for a [l]ight RFC, and should avoid concentrated exposure to all hazards and noise." Tr. 109, 672–73, 675. On reconsideration in June 2020, Dr. Krist affirmed this opinion. Tr. 128. The ALJ found these opinions to be persuasive because they were consistent with each other and were supported by the medical records. Tr. 28.

In August 2020, Plaintiff underwent surgery on his left hip to remove the screws from his first surgery. Tr. 693–94, 751. Subsequent to this second surgery, Plaintiff still complained of remaining hip pain. Tr. 785, 790. Plaintiff argues that these included decreased muscle mass around the left hip, limited range of motion, low back pain and pain in both legs, and decreased hip flexor strength. ECF No. 7-1 at 15–16. However, the ALJ did not find Plaintiff's complaints about his worsening hip pain to be consistent with the record. For instance, the ALJ discussed that no treatments were recommended for Plaintiff other than core strengthening exercises and avoiding alcohol, which Plaintiff did not follow, and that Plaintiff continued to manage musculoskeletal pain and neuropathy in his legs through his primary care provider. Tr. 27, 730, 817, 834. Plaintiff's treatment notes from March 2022 recorded, and the ALJ noted, that Plaintiff had "[r]eflexes 2+ bilaterally," had normal muscle tone and bulk, tested 5-/5 in all major groups of the upper and lower extremities, had sensation to light touch that diminished in the distal extremities, had full range of external rotation in the right hip and diminished external rotation in the left hip, and had normal coordination and gait. Tr. 27, 729–30.

It is true that the medical opinions of Dr. Lawrence and Dr. Krist were issued before Plaintiff underwent the second surgery to remove screws from his hip. However, the overall record does not indicate that Plaintiff's condition has deteriorated. *See Nicole P. o/b/o A.C.*, 2021 WL

3887259, at *7. As the ALJ discussed, Plaintiff's treatment records that indicate normal or good strength, muscle, and rotation in the hip are consistent with Dr. Lawrence and Dr. Krist's opinions. *See id.* Therefore, these medical opinions are not "stale." *See id.*

Because Plaintiff's argument that the ALJ erred by improperly relying on "stale" opinions is meritless, remand is not warranted on this ground.

**2. Duty to Develop the Record**

As a general matter, because Social Security proceedings are inquisitorial rather than adversarial, *see Sims v. Apfel*, 530 U.S. 103, 110–11 (2000), "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding," *Moran*, 569 F.3d at 112 (quotation marks, ellipsis, and citation omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Therefore, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history prior to making a disability determination. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citation omitted); *see also Mauzy v. Colvin*, No. 12-CV-866, 2014 WL 582246, at *5 (N.D.N.Y. Feb. 13, 2014) ("[A]dministrative law judges, as fact finders, may not automatically rely on absence of probative evidence 'without making an affirmative effort to fill any gaps in the record[.]'") (citation omitted). However, the ALJ's obligation to develop the record is not infinite and limitless, and does not extend to circumstances where the record contains sufficient evidence to allow the ALJ to make a determination. *See Guile v. Barnhart*, No. 07-CV-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010) (further development of the record is unnecessary where the evidence received by the ALJ is consistent and sufficient to determine whether a claimant is disabled); *Valoy v. Barnhart*, No. 02 Civ. 8955, 2004 WL 439424, at *7 (S.D.N.Y. Mar. 9, 2004)

("While the ALJ must supplement the record through his own initiatives when the record is incomplete or inadequate, this burden does not attach when the record is ample.").

Although Plaintiff argues that the ALJ should have developed the record, he does not argue that the record before the ALJ was incomplete. ECF No. 7-1 at 18–21. Rather, Plaintiff claims that the ALJ needed to seek medical opinions to interpret the raw medical data to assess Plaintiff's RFC. *Id.* However, an ALJ "may assess limitations of a claimant's RFC 'where there are no obvious gaps in the administrative record, and where the ALJ already possess a complete medical history,' despite the lack of a credible medical source opinion." *Clark v. Comm'r of Soc. Sec.*, No. 18-CV-0509, 2019 WL 3886723, at *6 (W.D.N.Y. Aug. 19, 2019) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).

Here, the record was sufficient for the ALJ to assess Plaintiff's limitations after his second hip surgery without a specific medical source opinion. The record contains Plaintiff's medical records from July 2018 to July 2022, which encompasses the period when Plaintiff fractured his left hip and received treatment. Tr. 406–952.[3] The ALJ discussed these records as well as the medical opinions related to the evaluation of Plaintiff's physical limitations. Tr. 26–27. Based on this, the Court concludes that the record was sufficient for the ALJ to assess Plaintiff's physical RFC without seeking additional medical opinions. *See Tankisi v. Comm'r Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (remand is not required if the record contains sufficient evidence from which an ALJ can assess the claimant's RFC, despite the lack of a medical opinion).

Therefore, remand is not warranted on this ground.

---

[3] The ALJ stated that there is a gap in the record between August 2020, when Plaintiff underwent his second hip surgery, and early 2021, when Plaintiff presented for an annual physical examination. Tr. 26. However, Plaintiff does not allege that information from this period is omitted from the record. Instead, as discussed above, Plaintiff's argument is that a gap exists in the record due to the lack of further medical opinions after Plaintiff's second hip surgery. ECF No. 7-1 at 18–21.

**b. Evaluation of Medical Opinions**

Plaintiff contends that the ALJ improperly rejected the more limiting opinions of Plaintiff's primary care provider, Dr. Robert Berke, and a medical consultative examiner, Dr. Russell Lee. ECF No. 7-1 at 22–27. Plaintiff argues that the ALJ mischaracterized Dr. Berke's opinion and cherry-picked the record to support the finding of not disabled, even though Dr. Berke's limiting opinion was consistent with the record and Dr. Berke personally examined Plaintiff. *Id.* Plaintiff thus claims that the RFC was not based on substantial evidence. *Id.* at 22.

20 C.F.R. § 416.920c identifies several factors that an ALJ will consider when evaluating medical opinions, the most important of which are "supportability" and "consistency." 20 C.F.R. § 416.920c(b)(2). The former pertains to the degree to which the medical source supports his or her opinion with "objective medical evidence and supporting explanations," while the latter pertains to the degree to which the opinion is consistent with "the evidence from other medical sources and nonmedical sources" in the record. *Id.* § 416.920c(c)(1), (2). Under the SSA's latest regulations, "no special deference is given to the opinion of the treating physician." *Tibbles v. Comm'r of Soc. Sec.*, No. 22-1127-CV, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (summary order) (citation omitted). Instead, the ALJ is free "to choose between properly submitted medical opinions, and may give greater weight to the report of a consultative physician than to that of a treating physician." *Id.* (ellipsis and citations omitted). The ALJ's "factual findings must be given conclusive effect so long as they are supported by substantial evidence" even if "the administrative record may also adequately support contrary findings on particular issues." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotation marks and citation omitted). In other words, the mere fact that a claimant can identify other evidence to support a different assessment of the relevant factors

does not entitle her to relief. *See Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021).

However, if the ALJ does not explicitly articulate, or a reviewing court cannot otherwise discern, how the ALJ arrived at particular restrictions, it raises the specter that the ALJ either cherry-picked the evidence to justify a pre-ordained conclusion, or interpreted the medical evidence based on his own lay judgment—both of which constitute error. *See, e.g.*, *Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("Reviewing courts decry administrative 'cherry picking' of relevant evidence."); *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) ("[A]n ALJ's ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson. While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." (internal quotation marks and citation omitted)). Put simply, the ALJ must tether the restrictions in the RFC to competent evidence and must provide a sufficient explanation to ensure "meaningful judicial review." *Moss v. Comm'r of Soc. Sec.*, No. 18-CV-365, 2020 WL 896561, at *3 (W.D.N.Y. Feb. 25, 2020).

Here, the Court finds no error in the ALJ's evaluation of the medical opinions as the determination is supported by substantial evidence. On April 29, 2022, Dr. Berke examined Plaintiff and noted that Plaintiff had pain in his left hip. Tr. 831–33. Dr. Berke stated that Plaintiff, *inter alia*: (1) can lift/carry 10 pounds and occasionally balance, crouch, kneel, and crawl; (2) has limitations in sitting, standing, walking, reaching, and pushing/pulling; (3) has limitations in exposure to heights, moving, and operating machinery; and (4) can never climb or stoop. Tr. 831–33. The ALJ, however, did not find this opinion to be persuasive. Tr. 28. The ALJ first noted

that Dr. Berke's opinion about Plaintiff's limitations was not supported as he did "not provide objective clinical findings, test results, etc." Tr. 28.

The ALJ then discussed the consistency factor of Dr. Berke's opinion. Tr. 28. The ALJ stated that earlier in the month, on April 6, 2022, Dr. Berke had noted that while Plaintiff appeared to be uncomfortable, he indicated no neurological deficits. Tr. 28, 816–17. The ALJ stated that these two opinions from Dr. Berke were not consistent even with each other. Tr. 28. Rather, the ALJ stated that Dr. Berke's earlier April 6 opinion was consistent with the record. Tr. 28. For instance, Plaintiff's treatment notes from November 2021 state that while Plaintiff appeared to be in mild distress and had an antalgic gait when walking, there were no neurological deficits. Tr. 807. Plaintiff's March 2022 treatment notes also state that Plaintiff had "[r]eflexes 2+ bilaterally," had normal muscle tone and bulk, tested 5-/5 in all major groups of the upper and lower extremities, had sensation to light touch that diminished in the distal extremities, and had full range of external rotation in the right hip and diminished external rotation in the left hip. Tr. 729–30.

The ALJ's decision thus explicitly discussed how Dr. Berke's April 29, 2022, limiting opinion concerning Plaintiff's RFC was not supported or consistent with the record. Tr. 28. Based on this, the ALJ's reasoning is "sufficiently discernible as to allow [this] [C]ourt to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Moss*, 2020 WL 896561, at *3.

In this regard, there is little weight to Plaintiff's argument that Dr. Berke's opinion was consistent with Dr. Lee's opinion. ECF No. 7-1 at 26. In February 2020, Dr. Lee opined that Plaintiff: (1) should avoid driving, operating heavy machinery, and unprotected heights; (2) has moderate limitations for activities involving prolonged standing and walking great distances; and (3) has a mild limitation for activities involving reaching above his head. Tr. 668. The ALJ noted

that the environmental limitations were consistent with the opinions of Dr. Lawrence and Dr. Krist. Tr. 28. However, the ALJ did not find Dr. Lee's opinion about other limitations to be persuasive because they were not supported by Dr. Lee's own examination of Plaintiff that showed Plaintiff has normal gait, was able to rise from the chair without difficulty, and did not need help changing and getting on and off the exam table. Tr. 28, 666. The ALJ also found that Dr. Lee's opinion about Plaintiff's limitation in overhead reaching was inconsistent with Plaintiff's own report from January 2020. Tr. 338. Therefore, it is clear that the ALJ also considered supportability and consistency when reviewing Dr. Lee's opinion.

The ALJ explicitly articulated how he arrived at particular restrictions and properly considered supportability and consistency when evaluating the medical opinions of Dr. Berke and Dr. Lee and supported his decision with substantial evidence. *See Moss*, 2020 WL 896561, at *3; 20 C.F.R. § 416.920c(b)(2). Therefore, the Court finds no error in the RFC determination. *See Michael G. v. Comm'r of Soc. Sec.*, No. 20-CV-605, 2021 WL 2457637, at *4 (N.D.N.Y. June 16, 2021) (remand not warranted where the ALJ appropriately evaluated the conflicting medical evidence and medical opinions and formed an RFC finding that was most consistent with the plaintiff's overall treatment record). In this regard, Plaintiff's claim that portions of the record support how he has remaining hip pain is meritless because an ALJ's findings relating to the regulatory factors that are reasonably supported by the record "must be given conclusive effect" even if "the administrative record may also adequately support contrary findings on particular issues." *Genier*, 606 F.3d at 49; *see Emery S.*, 2021 WL 2592363, at *4.

For the reasons above, remand is not warranted on this ground.

**CONCLUSION**

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is

GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 23, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York